NOT RECOMMENDED FOR PUBLICATION
File Name: 07a0020n.06
Filed: January 8, 2007

No. 05-6869

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| KENNETH CHANDLER, JR.; GEO TRANSPORTATION OF INDIANA, INC.; AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE CO., | ) ) ) ) ) | |
| Plaintiffs-Appellants, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY |
| v. | ) ) ) | |
| LIBERTY MUTUAL INSURANCE GROUP, | ) ) | |
| Defendant-Appellee. | ) | |

_____

BEFORE: CLAY and ROGERS, Circuit Judges; and KATZ, District Judge.[*]

**KATZ, District Judge.** This case involves the appeal from a grant of summary judgment by the district court in favor of Liberty Mutual, from which the plaintiff, American International Specialty Lines Insurance Company ("AISLIC") appeals. After the matter was fully briefed on appeal, this Court heard oral argument and hereby **AFFIRMS** the decision of the district court.

**BACKGROUND**

On June 6, 2002, a tractor-trailer driven by Kenneth Chandler ("Chandler") crossed the

_____

[*]The Honorable David A. Katz, United States District Judge for the Northern District of Ohio, sitting by designation.

1

median on I-75 in Grant County, Kentucky, colliding with a minivan, injuring Amber Young, and killing Norma Young, Heather McNay, and Evan Embry. *Chandler v. Liberty Mutual Insurance Group*, No. 2:05-cv-00071, (E.D. Ky. Nov. 3, 2005). The tractor-trailer was owned by Dairy Farmers of America, Inc. ("DFA"). On July 1, 2001, DFA had leased the vehicle and driver to Geo Transportation of Indiana ("Geo") and Geo leased them back to DFA on the same date by a different instrument, the Fleet Operator Lease Agreement ("FOLA" or "Indemnity Agreement"). In the FOLA, Geo agreed to indemnify DFA and hold DFA harmless from all claims. Geo also agreed to provide insurance of at least $11 million for DFA, and that "any and all insurance" provided by DFA would be excess to Geo's coverage.

Geo procured a Business Auto Policy ("LM Policy") from Liberty Mutual, naming DFA as an additional insured. Geo also obtained a commercial umbrella liability policy ("AISLIC Policy") from American International Specialty Lines Insurance Company ("AISLIC"). Chandler qualifies as an insured under both policies, but DFA is not listed as an additional insured in the AISLIC Policy. Pl.'s Br. at 7. On its own, DFA also procured a $2 million Liberty Mutual policy. *Id.*

In 2003 the victims of the car accident and Liberty Mutual began settling various wrongful death, personal injury, and other claims. Liberty Mutual paid these settlement fees out of a $2 million policy provided for in the separate agreement between Liberty Mutual and Geo to which DFA was an additional insured. When that limit was almost reached, Liberty Mutual sought defense and indemnity from AISLIC, per the AISLIC Policy. AISLIC, Geo, and Chandler filed an action for declaratory judgment seeking a declaration that the LM and AISLIC Policies require Liberty Mutual to exhaust its $2 million policy with DFA before AISLIC becomes responsible for any

indemnification. Liberty Mutual argued that the Policies make AISLIC the primary insurer and that the LM Policy's coverage is excess to the AISLIC policy. The district court agreed with Liberty Mutual that the AISLIC Policy was required to exhaust its $9 million policy before Liberty Mutual would be liable for the $2 million from the DFA Policy. Plaintiff appealed to this Court.

**A. The Policies**

There are three agreements that contain language relevant to this Court's decision: the LM Policy between Liberty Mutual and DFA, the AISLIC Policy between AISLIC and Geo, and the Indemnity Agreement between DFA and Geo.

**1. The LM Policy**

The parties' dispute, in large part, centers around the following clauses of the LM Policy.

Section V. - MOTOR CARRIER CONDITIONS
The following conditions apply in addition to the Common Policy Conditions:
* * *
B. General Conditions
* * *
5. Other Insurance - Primary And Excess Insurance Provisions
 a. While any covered "auto" is hired or borrowed from you by another "motor carrier," this Coverage Form's liability coverage is:
  (1) Primary if a written agreement between you as the lessor and the other "motor carrier" as the lessee requires you to hold the lessee harmless.
  (2) Excess over any other collectible insurance if a written agreement between you as the lessor and the other "motor carrier" as the lessee does not require you to hold the lessee harmless.
 b. While any covered "auto" is hired or borrowed by you from another "motor carrier" this Coverage Form's liability coverage is:
  (1) Primary if a written agreement between the other motor carrier as lessor and you as the lessee does not require the lessor to hold you harmless, and then only while the covered "auto" is used exclusively in your business as a "motor carrier" for hire.
  (2) Excess over any other collectible insurance if a written agreement between the other "motor carrier" as the lessor and you as the lessee

requires the lessor to hold you harmless.
* * *
e. Except as provided in Paragraphs a., b., c. and d. above, this Coverage Form provides primary insurance for any covered "auto" you own and excess insurance for any covered "auto" you don't own.
* * *
g. Regardless of the provisions of Paragraphs a., b., c., d. and e. above, this Coverage Form's Liability Coverage is primary for any liability assumed under an "insured contract."

J.A. 109.

## 2. The AISLIC Policy

The policy between AISLIC and Geo contains the following provisions:

I. INSURING AGREEMENT – COVERAGE A: EXCESS FOLLOW FORM INSURANCE
A. We will pay on behalf of the Insured those sums in excess of the total applicable limits of Scheduled Underlying Insurance that the Insured becomes legally obligated to pay as damages provided the damages would be covered by Scheduled Underlying Insurance except for exhaustion of the total applicable limits of Scheduled Underlying Insurance by the payment of Loss.

J.A. 24. The Excess Policy also provides, under *Section V – Definitions*:

P. Other Insurance under Coverages A and B means a policy of insurance providing coverage for damages covered in whole or in part by this policy.
However, Other Insurance does not include Scheduled Underlying Insurance . . . or any policy of insurance specifically purchased to be excess of this policy affording coverage that this policy also affords.
***
V. Scheduled Underlying Insurance under Coverages A and B means:
1. the policy or policies of insurance listed in the Schedule of Underlying Insurance forming a part of this policy; and
2. automatically any renewal or replacement of any policy in Paragraph 1 above . . . .
* * *
Scheduled Underlying Insurance does not include a policy of insurance specifically purchased to be excess of this policy affording coverage that this policy also affords.

J.A. 30-31. *Section VII – Conditions Applicable to Coverages A and B* contains the following

clause:

> L. Other Insurance
> If other valid and collectible insurance applies to damages that are also covered by this policy, this policy will apply excess of the Other Insurance. However, this provision will not apply if the Other Insurance is specifically written to be excess of this policy.

J.A. 42.

There is also a provision under *Endorsement No. 8* that lists specific entity exclusions and includes DFA: "Under Coverages A and B, the persons or organizations specified below will not be Insureds under this policy. . . . [DFA]." J.A. 63.

### 3. The Indemnity Agreement

The FOLA is an indemnity agreement that Geo, as Lessor, and DFA, as Lessee, entered into upon the leasing of certain vehicles and personnel to one another. J.A. 504. The FOLA contains the following provisions:

> 7. Liability Insurance. LESSOR agrees to provide public liability and property damage insurance with respect to the leased equipment . . . . In no event shall the coverage amount of said insurance be less than a combined single limit of . . . One Million Dollars ($1,000,000). In addition, LESSOR will provide an umbrella policy . . . in an amount not less than Ten Million Dollars ($10,000,000). LESSOR agrees to cause said policy or policies of insurance to include LESSEE as an additional named insured . . . . LESSOR agrees that any and all insurance provided by LESSEE shall be excess coverage.

> 8. Indemnification. LESSOR hereby agrees to indemnify, defend and save harmless LESSEE from any and all claims, fines or other expenses arising out of, based upon or incurred because of injury to any person or persons, or damage to property sustained or which may be alleged to have been sustained by reason of any act or omission on the part of LESSOR, its agents, servants or employees.

J.A. 507-08.

### STANDARD OF REVIEW

-5-

This Court will review a district court's order granting summary judgment *de novo*. *Smith v. Ameritech*, 129 F.3d 857, 863 (6th Cir. 1997). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Although the Court will draw all reasonable inferences in favor of the non-moving party, *see, e.g., Terry Barr Sales Agency, Inc. v. All-Lock Co.*, 96 F.3d 174, 178 (6th Cir. 1996) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986)), '[t]he mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.'" *Smith*, 129 F.3d at 863 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

## ISSUES AND CONCLUSIONS

This appeal involves three separate, but related, issues. Briefly stated, they are:

1) Should a court consider an indemnity agreement in assigning the priority of liability among overlapping insurance policies? This Court answers that inquiry in the affirmative

2) Was the Liberty Mutual policy specifically purchased to be excess to the AISLIC policy? This Court answers that inquiry in the affirmative.

3) Does the parol evidence rule bar extrinsic evidence of an indemnity agreement or a separate policy in determining the priority of insurance policies issued to different parties? This Court answers that inquiry in the negative.

Because the district court addressed these issues and others in a well-reasoned opinion

dealing with the complex issues now before this panel, there is no need for this Court to further elaborate on the reasons for affirming the grant of summary judgment to Liberty Mutual. Therefore, this Court **AFFIRMS** the district court's judgment on the basis of its well-reasoned opinion to be found at *Chandler v. Liberty Mutual Ins. Group*, No. 2:05-cv-00071 (E.D. Ky. Nov. 3, 2005).