RENDERED: DECEMBER 19, 2024
TO BE PUBLISHED

# Supreme Court of Kentucky

2023-SC-0239-DG

MOTORISTS MUTUAL INSURANCE
COMPANY

APPELLANT

V.

ON REVIEW FROM COURT OF APPEALS
NO. 2022-CA-0385
JEFFERSON CIRCUIT COURT NO. 16-CI-006010

FIRST SPECIALTY INSURANCE CORP.

APPELLEE

## OPINION OF THE COURT BY CHIEF JUSTICE VANMETER

## <u>REVERSING</u>

Frequently, an incident occurs which may be covered by policies issued by separate insurance companies. In such a situation, each company, through its policy, may attempt to make the other company primarily responsible for insuring the incident with its own coverage being secondarily responsible, *i.e.*, excess insurance. In this case, the issue involves interpreting the conflicting "other insurance" provisions between Motorists Mutual Insurance Company ("Motorists") and First Specialty Insurance Corporation ("First Specialty"). Although the two provisions differ somewhat, they are indistinguishable in meaning and intent, which under our case law results in the clauses being mutually repugnant and therefore of no effect. Due to these provisions being mutually repugnant excess clauses, we hold that the Court of Appeals erred in

holding that First Specialty's "other insurance" provision was a nonstandard escape clause and, additionally, overrule an earlier decision, *Empire Fire & Marine Insurance Co. v. Haddix,* 927 S.W.2d 843 (Ky. App. 1996) on which the Court of Appeals relied. We also hold that these insurance companies share primary liability—in part because Motorists waved its indemnification argument before the Court of Appeals—and must contribute equal shares to defend and indemnify the insureds in the underlying matter, Alltrade, Jeremy Tanzilla, and Bruce Key.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The underlying dispute between the parties arose from the tragic death of a five-year-old child after he was struck by an Alltrade[1] employee, Tanzilla, as Tanzilla was driving his vehicle at an apartment complex owned by Whispering Brook Acquisitions LLC. Alltrade was party to a Service Agreement with Whispering Brook in which Whispering Brook retained Alltrade to perform work around the apartment complex. That Service Agreement called for Whispering Brook to indemnify and hold harmless Alltrade for all liability on account of the management of the property.

Alltrade was insured under a commercial general liability policy with Motorists and Whispering Brook was insured under a commercial general liability policy with First Specialty. Both insurance contracts contained "other insurance" provisions. Motorists's "other insurance" provision provided, in

---

[1] Alltrade refers to Alltrade Service Solutions, LLC and Alltrade Property Management, ALC.

2

relevant part, "[f]or any covered 'auto' you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance." First Specialty's "other insurance" provision states in relevant part "[t]his insurance is excess over: [a]ny of the other insurance, whether primary, excess, contingent or any other basis[.]"

Following the accident, the child's family brought a wrongful death suit in Jefferson Circuit Court against Whispering Brook and Alltrade.[2] Motorists intervened in the action to determine the rights, duties, and priority of coverage between Motorists and First Specialty for the damages alleged against Alltrade.

By Order entered December 19, 2019, the trial court first determined that Alltrade and its employees were insureds under First Specialty's policy.[3] The court then held that Motorists' and First Specialty's "other insurance" provisions were mutually repugnant excess clauses. With a determination that the provisions were excess clauses, the trial court granted summary judgment for Motorists ruling that the companies share primary liability for the loss and were required to contribute equal shares. In addition, the trial court rejected Motorists' argument that First Specialty, as Whispering Brooks' insurance company, was primarily liable due to an indemnification provision in favor of Alltrade from Whispering Brook in those parties' Service Agreement.

---

[2] The wrongful death lawsuit also named the apartment complex (Victoria Gardens), Tanzilla, and his supervisor, Bruce Key.

[3] First Specialty appealed this issue to the Court of Appeals, which affirmed the trial court's decision. *First Specialty Ins. Corp. v. Alltrade Prop. Mgmt.*, No. 2022-CA-0385-MR, slip op. at 6-23, 2023 WL 3133176, at *2-8 (Ky. App. Apr. 28, 2023). This issue is not presented for our review.

3

Ultimately, the underlying case was settled with the plaintiffs. As noted by the Court of Appeals,[4] First Specialty reserved its right to recoup from Motorists the amount it paid in the underlying settlement; Motorists reserved its right to recoup from First Specialty a portion of its defense fees. The trial court then made its December 2019 Order final and appealable. First Specialty filed an appeal with the Court of Appeals. Motorists, however, did not file a cross-appeal as to its indemnification argument that the trial court rejected.

The Court of Appeals reversed the trial court and held that First Specialty's "other insurance" provision was a nonstandard escape clause because the language was virtually identical to the nonstandard escape clause identified in *Empire Fire & Marine Insurance Co. v. Haddix*, 927 S.W.2d 843 (Ky. App. 1996). The Court of Appeals thus reversed the trial court's decision that the parties share primary liability, and ordered Motorists to provide primary coverage and First Specialty to provide only excess coverage.

Motorists then sought discretionary review on the priority of coverages from this Court, which we granted.

## II. STANDARD OF REVIEW

"The proper standard of review on appeal when a trial judge has granted a motion for summary judgment is whether the record, when examined in its entirety, shows there is 'no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.'" *Bruner v. Cooper*,

---

[4] *First Specialty Ins. Corp.,* No. 2022-CA-0385-MR, slip op. at 4, 2023 WL 3133176, at *2.

4

677 S.W.3d 252, 269 (Ky. 2023) (quoting *Hammons v. Hammons*, 327 S.W.3d 444, 448 (Ky. 2010)). When a motion for summary judgment at the trial court, and on appeal, presents only a question of law, we review *de novo* and give no deference to the lower courts. *Patton v. Bickford*, 529 S.W.3d 717, 723 (Ky. 2016). The interpretation and construction of an insurance contract is a matter of law. *Isaacs v. Sentinel Ins. Co.*, 607 S.W.3d 678, 681 Ky. 2020. In our review of the record in this matter, the parties do not dispute the material facts but instead present only questions of law. Therefore, we review *de novo*.

### III. ANALYSIS

### *A. Motorists waived its indemnification argument.*

At the outset, we must resolve whether this Court should address Motorists' indemnification argument. Motorists argues that it should only be responsible for excess coverage and First Specialty should be responsible for the primary coverage because Whispering Brook agreed to indemnify Alltrade in the parties' Service Agreement. Motorists submits this Court should address the indemnification argument because Motorists raised it before the trial court and the Court of Appeals. Motorists further argues that if it failed to properly preserve the argument, it contends that KRS[5] 418.065 gives appellate courts "discretion to apply controlling law regardless of whether it has been raised by the litigants or addressed by the trial court in a declaratory judgment action." *Bowling v. Ky. Dep't of Corr.*, 301 S.W.3d 478, 485-86 (Ky. 2009).

---

[5] Kentucky Revised Statutes.

The dispute between the parties at the trial court involved two primary issues: 1) whether Alltrade and its employees were covered under First Specialty's policy; and 2) if so, what were the respective liabilities of the insurance companies. This latter issue entailed two subparts a) determination of the meaning of the "other insurance" provisions and b) the effect, if any, of the Service Agreement indemnification provision. As previously noted, the first issue is not before us. As to indemnification, the trial court reasoned that the coverage for contractual liability provided in First Specialty's policy was treated in the same manner as liability for bodily injury that arises on a non-contractual basis. Accordingly, First Specialty's coverage for the Service Agreement and the liability for bodily injury were subject to the same "other insurance" provision at issue in this case. The trial court held Motorists' indemnification argument thus had no effect on the issue of priority of coverage. Notwithstanding rejection of this argument, the trial court did grant Motorists' motion for summary judgment, albeit not awarding all the relief sought by Motorists. In other words, the trial court ruled that the insurance companies were to contribute equal shares, as opposed to making Motorists' coverage excess (as a result of its indemnification argument).

After the trial court's ruling, First Specialty filed its appeal, but Motorists did not file a cross-appeal. "A cross appeal is appropriate when the judgment fails to give the cross-appellant all the relief he has demanded[.]" *Brown v. Barkley*, 628 S.W. 2d 616, 618 (Ky. 1982). The *Brown* Court focused its

6

attention on distinguishing between the instances in which a cross-appeal is necessary:

> Some of our past opinions suggesting the necessity of a cross-appeal in order for an appellee to bring an adverse ruling of the trial court under review by an appellate court appear to have fostered confusion by failing to distinguish between those instances in which the judgment gives the appellee the ultimate relief for which he has contended and those in which the judgment gives him something less. **In the latter case he cannot challenge the shortcomings of the judgment without a cross-appeal**. He can, however, by way of bolstering the judgment against the possibility that the appellate court may accept the appellant's claim of error, make the point that he was nevertheless entitled to the judgment on a theory that was properly presented but erroneously rejected by the trial court.

*Id.* at 618-19 (emphasis added). Here, Motorists should have filed a cross-appeal because its indemnification argument was rejected by the trial court and the trial court failed to give Motorists all the relief it demanded.

Furthermore, Motorists failed to raise the indemnification issue in its prehearing statement at the Court of Appeals. Under RAP 22(C)(2), "[a] party shall be limited on appeal to issues identified in the prehearing statement, except upon a timely motion demonstrating good cause, the Court of Appeals may permit additional issues to be raised." *See Sallee v. Sallee,* 142 S.W.3d 697, 698 (Ky. App. 2004) (stating an argument not raised in a prehearing statement was not properly before the Court of Appeals for review). Motorists provided the following in its prehearing statement:

> First Specialty Insurance Corp. ("FSIC") owed Defendants . . . a duty to defend and indemnify the claims alleged against them pursuant to the relevant policy of insurance. FSIC also owes Motorists one half of defense costs to their mutual insureds. The decision of the trial court in its Order Granting Summary Judgment in the Declaratory Judgment Action should be affirmed.

7

Nowhere in Motorists' prehearing statement did it request that the Court of Appeals address a claimed erroneous trial court ruling regarding the effect of the Service Agreement on the priority of coverage between the parties.

Not only did Motorists fail to file a cross-appeal and fail to raise the indemnification argument in its prehearing statement, but it also waived that claim of error by requesting the Court of Appeals affirm the trial court's summary judgment finding Motorists and First Specialty shared primary liability for the loss at issue. Specifically, Motorists requested,

> The Trial Court's Order granting Motorists' and Alltrade's Motions for Summary Judgment should be upheld in its entirety. . . .
>
> Further, both Motorists' and [First Specialty]'s policies provide for excess coverage and are mutually repugnant. The Trial Court rightly determined the [First Specialty] policy does not include an escape clause. Accordingly, [First Specialty] shares equal liability to defend and indemnify Alltrade, Tanzilla and Key.
>
> For all the reasons stated above, this Court should affirm the Trial Court's Order.

Motorists' Brief for Appellees, pp. 21-22.

Under RAP[6] 32, both appellants and appellees are required to submit arguments conforming to points and authorities:

> An argument conforming to the statement of points and authorities, with ample references to the specific location in the record and citations of authority pertinent to each issue of law and which shall contain at the beginning of the argument a statement with reference to the record showing whether the issue was properly preserved for review and, if so, in what manner.

---

[6] Kentucky Rules of Appellate Procedure.

RAP 32(A)(4), Appellant's Opening Brief; *see also* RAP 32(B)(4), Appellee's Response Brief (requiring "[a]n argument conforming to the appellee's counterstatement of points and authorities, and to the requirements for appellant's arguments[]"). Before this Court, in its reply brief, Motorists claims it raised the indemnification provision and provides a citation to its Court of Appeals brief, but in that passage, before the Court of Appeals, the indemnification argument was not asserted to impose primary coverage on First Specialty with Motorists supplying excess coverage. To the contrary, Motorists argued to the Court of Appeals that the trial court correctly determined that the two insurance companies shared primary liability for the loss and must contribute equal shares to defend and indemnify Alltrade, Tanzilla, and Key. Motorists requested that the Court of Appeals affirm the trial court. Nowhere else in Motorists' Court of Appeals brief did it assert the indemnification argument was wrongly rejected by the trial court.

Finally, Motorists argues that because its intervention in the case below was for a declaration of rights, KRS 418.040 to 418.090, its indemnification argument may nonetheless be addressed under the authority of KRS 418.065. This statute, in its entirety, states:

> The court may refuse to exercise the power to declare rights, duties or other legal relations in any case where a decision under it would not terminate the uncertainty or controversy which gave rise to the action, or in any case where the declaration or construction is not necessary or proper at the time under all the circumstances. **The appellate court in its consideration of the case, shall not be confined to errors alleged or apparent in the record.** When, in its opinion, further pleadings or proof is necessary to a final and correct decision of the matters involved, or that should be involved, it shall remand the case for that purpose; or if in its opinion the

9

action is prematurely brought, or where a ruling in the appellate court is not considered necessary or proper at the time under all the circumstances, it may direct a dismissal without prejudice in the lower court.

(Emphasis added). While we might agree with Motorists that this statute provides appellate courts the "discretion" to consider errors not alleged in the record in a declaratory judgment action, we decline to exercise that discretion in this case. In *Bowling*, we cautioned that KRS 418.065 "should not be viewed as a judicial safety net, relieving litigants of the need to consider carefully their responsive pleadings." 301 S.W.3d at 486. Our review of the cases in which courts appear to have applied the statute as Motorists advocates demonstrates that they did so in cases involving public questions having potential impact beyond just the rights of the litigants involved. *See Bowling, id.* at 481-82 (addressing constitutionality of Kentucky's lethal injection protocol); *Rea v. Gallatin Cnty. Fiscal Ct.*, 422 S.W.2d 134 (Ky. 1967) (addressing constitutionality of certain property tax measures enacted by the legislature). To be clear, we do not hold that declaratory judgment cases involving public questions are the only cases appropriate to apply KRS 418.065. We merely hold that, in this case, Motorists' specific waiver of its indemnification argument, by (i) failing to file a cross-appeal; (ii) failing to raise the issue in its prehearing statement; and (iii) arguing for full affirmance of the trial court's summary judgment, makes application of KRS 418.065's judicial safety net particularly inappropriate. Under these circumstances, we decline to address Motorists' indemnification argument.

10

### B. The "other insurance" provisions are excess clauses.

The second issue in this case deals with Motorists and First Specialty providing "other insurance" provisions in their respective policies. Motorists' "other insurance" provision states in relevant part "[f]or any covered 'auto' you don't own, **the insurance provided by this Coverage Form is excess over any other collectible insurance**." (Emphasis added). First Specialty's "other insurance" provision states in relevant part **"[t]his insurance is excess over: [a]ny of the other insurance, Whether primary, excess, contingent or any other basis**[.]" (Emphasis added). First Specialty contends that its "other insurance" provision is not an excess clause but instead a nonstandard escape clause. This Court disagrees and holds that First Specialty's and Motorists' "other insurance" provisions are mutually repugnant excess clauses.

#### 1. Excess Clauses v. Escape Clauses.

Excess clauses and escape clauses have different purposes. An excess clause limits liability and provides that the insurer will pay for a loss but only after any primary coverage available from another insurer has been exhausted. *Motorists Mut. Ins. Co. v. Glass*, 996 S.W.2d 437, 453 (Ky. 1997). A standard escape clause denies liability if other valid and collectible insurance is available to the insured. *Gov't Emps. Ins. Co. v. Globe Indem. Co.*, 415 S.W.2d 581, 582 (Ky. 1967). A nonstandard escape clause is different from an escape clause because it denies liability if other insurance is available but also specifies that this other insurance may be either primary or excess. *Id.*

11

In cases wherein one policy has a nonstandard escape clause and the other an excess clause, the policy with the excess clause bears primary liability because the nonstandard escape clause policy "anticipated the possibility of the existence of an 'excess insurance' clause in the driver's insurance policy, and expressly contracted against liability in that situation." *Id.* However, when both policies have mutually repugnant excess clauses, neither one of them takes effect and the two insurers share the costs to defend and indemnify their insureds. *See Ohio Cas. Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 511 S.W.2d 671, 675 (Ky. 1974) (holding that each insurer was jointly obligated to defend and indemnify because "both policies attempted to limit coverage to the excess over the other and that the provision with respect to proration are irreconcilable[]").

When courts are tasked with determining the relationship between conflicting policies it will generally take a two-step approach: (1) determine if the clauses are mutually repugnant; (2) and then apportion the loss between each insurer. *Ky. Farm Bureau Mut. Ins. Co. v. Shelter Mut. Ins. Co.*, 326 S.W.3d 803, 807 (Ky. 2010). To be mutually repugnant, the conflicting policies must be "indistinguishable in meaning and intent, [and] one cannot rationally choose between them[.]" *Id.* (quoting *Travelers Indem. Co. v. Chappell*, 246 So.2d 498, 504 (Miss. 1971)). Whether policies are "indistinguishable in meaning and intent" can be highly subjective and can result in opposite conclusions if the policies are not virtually the same. *Id.* at 808. Here,

12

Motorists' and First Specialty's "other insurance" provisions are virtually the same.

First Specialty distinguishes its "other insurance" provision as a nonstandard escape clause, but the language does not deny coverage altogether when other valid and collectible insurance covers the defined risk. The provision seeks only to limit the amount of liability associated with the defined risk to the excess over other valid and collectible insurance. Motorists' "other insurance" provision accomplishes the exact same thing. Both provisions seek to limit coverage liability in light of other available insurance. First Specialty's provision simply lists examples of other collectible insurance. The two "other insurance" provisions are mutually repugnant excess clauses because both provisions are indistinguishable in intent and meaning by both limiting liability associated with the defined risk as excess over other valid and collectible insurance.

Since Motorists' and First Specialty's "other insurance" provisions are mutually repugnant excess clauses, the loss between the insurers must be apportioned. *Shelter Mut. Ins. Co.,* 326 S.W.3d at 807. In *Shelter*, we recognized "three primary options for pro-rata apportionment: policy limits, premiums paid, and the equal share method." *Id.* (citing *Reliance Ins. Co. v. St. Paul Surplus Lines Ins. Co.,* 753 F.2d 1288, 1291 (4th Cir. 1985)).

> Under the policy limits approach, the court calculates the loss amount between each insurer in accordance with the maximum coverage limits of each insurance policy. The second approach allocates the loss based on the amount of the premium paid by each insured to each insurer. The third approach is a multi-step method, with the loss initially apportioned equally between two

13

insurers until the lesser coverage is exhausted. Thereafter, the remaining loss is absorbed by the insurance company with the larger policy, up to its policy limits.

*Id.* (internal citations omitted). Although each method has its faults, as discussed in *Shelter*, 326 S.W.3d at 807-10, the equal share method should be applied to Motorists and First Specialty. *Id.* at 810-11. Unlike *Shelter*, wherein the legislative intent and purposes of the Kentucky Motor Vehicle Reparations Act (MVRA) were key considerations in applying the correct apportionment method, this case needs only the language from the policies. *Id.* The policies include mutually repugnant excess clauses that cancel each other out leaving them both to provide co-primary coverage. Fortunately, in this case both policies have identical limits of liability.[7] Therefore, given the identical limits of liability and the co-primary coverage for both parties, the best apportionment method is for Motorists and First Specialty to contribute equal shares to defend and indemnify Alltrade, Tanzilla, and Key.

### 2. This Court overrules *Empire Fire & Marine Insurance Co. v. Haddix*, 927 S.W.2d 843 (Ky. App. 1996).

In *Haddix*, the Court of Appeals held that an "other insurance" provision including the phrase "whether primary, excess, contingent, or any other basis" disclaimed liability and was a nonstandard escape clause. 927 S.W.2d at 845. The Court of Appeals followed that holding and held First Specialty's "other insurance" provision to be a nonstandard escape clause because it included

---

[7] First Specialty's policy has a non-owned auto endorsement that provides $1,000,000 in coverage and Motorists' policy provides $1,000,000 in business auto coverage.

14

the same language. As discussed above, however, First Specialty's "other insurance" provision is a mutually repugnant excess clause. In addition to reversing the Court of Appeals decision, this Court must also overrule the Court of Appeals decision in *Haddix* because it contradicts this Court's analysis as applied under *Shelter*. The specific language in the two "other insurance" provisions does not have to be identical for the provisions to be mutually repugnant excess clauses. To the contrary, the intent and meaning of the provisions are determinative.

## IV. CONCLUSION

In conclusion, we reverse the Court of Appeals' opinion holding that First Specialty's "other insurance" provision was a nonstandard escape clause, overrule *Haddix,* and hold First Specialty's and Motorists' "other insurance" provisions are mutually repugnant excess clauses. Motorists and First Specialty are to contribute equal shares to defend and indemnify Alltrade, Tanzilla, and Key. Motorists failed to preserve its indemnification argument by not filing a cross-appeal and waiving the argument before the Court of Appeals. The Jefferson Circuit Court's summary judgment is affirmed. This matter is remanded to the Jefferson Circuit Court for such further proceedings as may be necessary.

All sitting. Bisig, Lambert, and Nickell, JJ., concur. Conley, J., concurs in part and dissents in part by separate opinion in which Keller and Thompson, JJ., join.

15

CONLEY, J., CONCURRING IN PART AND DISSENTING IN PART: I fully concur with the Court's decision insofar as it overrules *Haddix* and concludes the two "other insurance" clauses are mutually repugnant. I, however, dissent from the Court insofar as it refuses to apply the underlying indemnity clause between the insureds. From my reading of case law, the indemnity agreement determines which insurer bears primary coverage; in this case, First Specialty. The Court declines to consider the indemnity clause question first, because it believes it was necessary for Motorists to cross-appeal the issue; and second, because the issue was not identified in the prehearing statement before the Court of Appeals. But these are functionally two different expressions of the same principle—that Motorists should have identified the question by appealing it. I disagree.

This case is a declaratory action. Before the trial court, Motorists sought either to have the indemnity clause applied and declare First Specialty to owe primary coverage or have the clauses declared mutually repugnant and both insurers share primary coverage. I agree that the trial court's decision based on the latter argument gives Motorists "something less" than the maximum relief afforded by the former argument. *Brown v. Barkley*, 628 S.W.2d 616, 619 (Ky. 1982). But this Court can consider the indemnity issue by virtue of KRS 418.065 and our interpretation of that statute in *Rea v. Gallatin Cnty. Fiscal Court*, 422 S.W.2d 134, 138 (Ky. 1967). In declaratory actions, "[t]he appellate court in its consideration of the case, shall not be confined to errors alleged or apparent in the record." KRS 418.065. In *Rea*, we plainly held, pursuant to this

16

language, "[t]he general rule that matters not raised below may not originally be raised in this court does not apply[.]" *Id.* To get around this ruling, the Court suggests that we have hesitated to apply this rule when not addressing a constitutional question or a matter of public importance beyond the parties involved. That is simply not true. *Dotson's Adm'r v. Ferrell,* 169 S.W.2d 320 (Ky. 1942) (invoking rule to remand case and await the judgment of an Ohio court concerning construction of a will). But it is a moot point because in the very next sentence the Court states it is not necessary to raise a constitutional question or matter of public concern for a party to avail itself of *Rea* and KRS 418.065. Thus, the Court reaches the awkward conclusion that KRS 418.065's renunciation of the rule of preservation in declaratory actions does not apply here because Motorists did not properly preserve the indemnity question. I strongly disagree. As a simple matter of logic, lack of preservation of an argument cannot be a reason for why the rule disclaiming the need for preservation does not apply.

While this Court certainly has a discretion when invoking this power, it is a discretion that must be exercised within and pursuant to the statute. The Court's "discretion" here is to ignore the plain text of the statute. Instead, our discretionary power to not consider an unpreserved error of law should only be invoked when taking cognizance of such would not alter the substantive outcome of the case. Here, however, the unpreserved legal error does materially alter the substance of the outcome. If Motorists is successful on the indemnity

17

issue, then it would be entitled to recoup from First Specialty money it paid pursuant to the trial court's order that both were co-primary insurers.

Nor do I find the conclusion that the argument was waived persuasive. The purpose of the Declaratory Judgment Act is "remedial" and "affording relief from uncertainty and insecurity with respect to rights, duties and relations[.]" KRS 418.080. "The intent of the declaratory judgment statutes is not to give parties greater rights than those which they previously possessed, but to permit the declaration of those rights before they mature." 26 C.J.S. Declaratory Judgments § 8. Yet how can we pretend to declare the legal rights and duties of Motorists or First Specialty without taking cognizance of the underlying contract between the insureds? "[I] it is the parties' rights and liabilities to each other which determine the insurance coverage; the insurance coverage does not define the parties' rights and liabilities one to the other." *Chubb Ins. Co. of Canada v. Mid–Continent Casualty Co.,* 982 F.Supp. 435, 438 (S.D. Miss. 1997).

I do not think Motorists' defense of the trial court's judgment before the Court of Appeals sufficiently constitutes waiver. The trial court's judgment gave Motorists a little relief, and it was entitled to defend what little it got. But our purpose on appeal in declaratory judgment actions is not merely to determine whether the trial court made legal errors. It is to determine the rights and duties of Motorists and First Specialty. To do so, we "shall not be confined to errors alleged or apparent in the record." KRS 418.065.

18

Since I believe the issue may properly be considered, it takes little explaining to demonstrate that the indemnity clause between the insureds governs which of the insurers will be primarily liable. "[A]n indemnity agreement between the insureds or a contract with an indemnification clause . . . may shift an entire loss to a particular insurer notwithstanding the existence of an 'other insurance' clause in its policy." 15 *Couch* § 219:1. Although unpublished, the Eastern District of Kentucky has considered this issue and explained:

> the majority of courts appear to have held that such an indemnity agreement **is not only relevant, but pivotal** to the "excess v. primary" coverage analysis. *See, e.g., St. Paul Fire & Marine Ins. Co. v. American Int'l Specialty Lines Ins. Co.,* 365 F.3d 263, 270 (4th Cir. 2004) (holding that an indemnity agreement between insureds controls in an insurance priority dispute, noting that parties procured the lines of insurance pursuant to agreement); *American Indemnity Lloyds v. Travelers Property & Casualty Ins.,* 335 F.3d 429, 436 (5th Cir. 2003) (similar); *Wal–Mart Stores, Inc. v. RLI Ins. Co.,* 292 F.3d 583, 587–93 (8th Cir. 2002) (indemnification provisions in contract between supplier and retailer obligated supplier to protect retailer and its primary insurer from liability arising from settlement of products liability action); *Chubb Ins. Co. of Canada v. Mid–Continent Casualty Co.,* 982 F.Supp. 435, 438 (S.D. Miss. 1997) (indemnity agreement controls parties' rights and liabilities to each other, which determine insurance coverage); *Federal Ins. Co. v. Gulf Ins. Co.,* 162 S.W.3d 160, 166 (Mo. App. 2005) (indemnity agreement is relevant in coverage dispute and under circumstances of case it controls obligations of parties' insurers).

*Chandler, Jr. v. Liberty Mut. Ins. Group*, No. CIVA 2005-71 WOB, 2005 WL 5629027, at *4 (E.D. Ky. Nov. 3, 2005), *aff'd sub nom. Chandler v. Liberty Mut. Ins. Grp.*, 212 F. App'x 553 (6th Cir. 2007) (emphasis added).

As *Chubbs* succinctly expressed the rule: to not apply the indemnity agreement between the insureds "would render the indemnity contract between

19

the insureds completely ineffectual and would obviously not be a correct result, for it is the parties' rights and liabilities to each other which determine the insurance coverage; the insurance coverage does not define the parties' rights and liabilities one to the other." *Chubb Ins. Co.*, 982 F.Supp. at 438. *See also Rossmoor Sanitation, Inc. v. Pylon, Inc.,* 532 P.2d 97, 104–05 (Cal. 1975) ("to apportion the loss in this case pursuant to the other insurance clauses would effectively negate the indemnity agreement . . . ."); *Nationwide Mut. Fire Ins. Co. v. Erie Ins. Exchange*, 798 S.E.2d 170, 174 (Va. 2017) ("we agree with the rationale in *St. Paul Fire & Marine,* that an indemnification agreement may shift the loss from one insurer to another . . . ."); *Nucor Steel Tuscaloosa, Inc. v. Zurich American Ins. Co.*, 343 So.3d 458, 474 (Ala. 2021) (endorsing rule but finding it inapplicable because indemnity agreement was void for violating public policy).

Accordingly, I would adopt the majority rule and declare Fire Specialty owes primary coverage over Motorists Mutual notwithstanding the traditional rule that where two excess clauses are mutually repugnant neither will be given effect and both insurers are deemed primarily liable. *Ohio Cas. Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 511 S.W.2d 671, 675 (Ky. 1974).

Keller and Thompson, JJ., join.

COUNSEL FOR APPELLANT:

Michelle L. Burden
Garvey Shearer Nordstrom PSC

Michael D. Risley
Bethany A. Breetz
Stites & Harbison, PLLC


COUNSEL FOR APPELLEE:

J. Phillip Fraley, Jr.
Elkins Ray, PLLC